**IN THE UNITED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PRICEPLAY.COM, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-92-RGA |
| | ) | |
| AOL ADVERTISING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF PRICEPLAY.COM'S BRIEF IN OPPOSITION TO DEFENDANT
AOL ADVERTISING, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE**

**I.  INTRODUCTION** ........................................................................................................ 1

**II.  BACKGROUND** ........................................................................................................ 1

**III. SUMMARY OF THE ARGUMENT** ..................................................................... 5

**IV. ARGUMENT** ............................................................................................................ 7

   **A.**    **The Relevant Law** ........................................................................................ 7

   **B.**    **The Asserted Claims Are Patent Eligible** ................................................ 9

**V.  CONCLUSION** ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014)...................... 1, 5, 6, 7, 8, 9, 10, 11, 13, 14

*Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013).............. 8

*Bilski v. Kappos*, 561 U.S. 593 (2010).......................................................................... 1, 6, 8, 9, 10

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)............................................................................ 1

*Diamond v. Diehr,* 450 U.S. 175 (1981)..................................................................................... 10

*Gottschalk v. Benson*, 409 U.S. 63 (1972)................................................................................... 9

*Mayo Collaborative Service v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (U.S. 2012).............. 8, 9

*O'Reilly v. Morse,* 56 U.S. 62 (U.S. 1854) ................................................................................. 8

**Statutes**

35 U.S.C § 101 ......................................................................................................... 1, 7, 8, 11, 14

I.    **INTRODUCTION**

This is Plaintiff Priceplay.com, Inc.'s Opposition to the Motion to Dismiss of Defendant AOL Advertising, Inc. (AOL).   Contrary to AOL's Motion, Priceplay.com's asserted patent claims recite sufficiently narrow subject matter, so that they do ***not*** preempt or disproportionately tie up "a fundamental concept." Those claims are therefore not invalid under 35 U.S.C § 101.

AOL misapplies the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014).   Essentially, AOL proposes that the Court analyze the patent eligibility issue by equating the "fundamental concept" with the asserted claim, which eviscerates the second step of the framework set forth by the Supreme Court in *Alice*.   AOL asserts that the *Alice* "fundamental concept" is co-terminus with the scope of the claims.   If the asserted claims are as broad as that concept (as they must be), those claims would "preempt" that concept and are therefore invalid under § 101 as claiming ineligible subject matter.   *Alice* is not so sweeping.   AOL's approach to the patent eligibility issue is tautological, contrary to the holding of *Alice*, and would categorically deny patent protection for the entire class of business method patents, in contravention of *Bilski v. Kappos*, 561 U.S. 593 (2010) (citing *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980)).

II.   **BACKGROUND**

Priceplay.com filed a Second Amended Complaint on June 30, 2014, accusing AOL of infringing two patents – U.S. Patent Nos. 8,050,982 and 8,494,917 – by selling ad space to e-commerce merchants via a system and a method which combine an ***interactive competitive activity*** and ***interactive bidding***.   These patents are based on an original application filed in 1999, the earliest days of Internet commerce.

Broadly speaking, each claim of the '982 and '917 patents recites performance of an Internet sales transaction involving the determination of a sale price, ***via the combination of (1) the result of an auction and (2) the result of a competitive activity by the buyer***.

The claims of '982 patent additionally require the step of "receiving data representing ***a binding commitment*** from the buyer via the global communication network to purchase a product for ***a price that will be*** partially based upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased" (emphasis added).  The buyer is therefore bound to buy the product for a price that has not yet been determined, *i.e.,* "will be" based (*e.g.,* the buyer does not initially know the price of the product, but nonetheless is bound to buy the product).

Claim 1 of the '982 patent also requires "an **algorithm** to calculate the price of the product based at least partially upon the results of the participation of the buyer in the competitive activity and at least partially based on results of the auction; wherein the price is at least partially dependent on the outcome of the competitive activity" (emphasis added).  Each of the remaining claims of the '982 and '917 patents requires a similar "price determining algorithm."

Claim 1 of the '982 patent is representative of the claims of that patent and recites:

*A system comprising multiple databases accessible by at least one computer server, wherein the system is programmed to perform the steps of a sales transaction, the steps comprising:*

*communicating via the global communication network to a buyer;*

***receiving data representing a binding commitment from the buyer*** *via the global communication network to purchase a product for a price that* ***will be partially based upon the buyer's participation in an auction*** *and* ***participation in a***

> *competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased;*
>
> *wherein the competitive activity is required as part of the sales transaction; and*
>
> *using **an algorithm to calculate the price** of the product based at least partially upon the results of the participation of the buyer in the competitive activity and at least partially based on results of the auction; wherein the price is at least partially dependent on the outcome of the competitive activity.*

(Emphasis added).  The remaining claims of the '982 patent further refine the elements of the claimed system.  For instance, dependent claim 2 additionally requires "***At least two participants*** participating in the competitive activity and the auction" (emphasis added).   Claim 3 recites the further step of "receiving data representing a ***second binding commitment from the second buyer*** to purchase the product for a second price; the second price will be at least partially based on the competitive activity and the auction" (emphasis added).

Claim 13 of the '917, which AOL claims to be illustrative (AOL Op. Br. At 3) and which is broader than any of the '982 patent claims, recites:

> *A method of calculating a sale price in **an auction** over a global communications network, said method comprising:*
>
> *receiving data from a buyer representing participation in an intermediary activity;*
>
> *receiving data from the buyer representing at least one bid for a product;*
>
> *assigning a score at least partially based on the buyer's participation in the intermediary activity;*
>
> *calculating the sale price using a price determining algorithm via at least one computer server, **wherein the sale price is at least partially dependent on the score and the at least one bid**.*

(Emphasis added).  As with the '982 patent, the remaining claims of the '917 patent further refine the elements of the claimed method.

Claim 13 of the '917 patent does not require the step of "receiving data representing ***a binding commitment*** from the buyer via the global communication network to purchase a product for a price that ***will be partially based*** upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased," as is recited in the representative '982 patent claims above (emphasis added).

The Abstract of the '982 specification summarizes the subject matter of the '982 patent as a "business process … for conducting business transactions over the Internet, allowing buyers an opportunity to reduce the price of a product/service based on the buyer's performance during a Price-Determining-Activity (PDA)."[1]

The "Field of the Invention" states that:

> [t]he present invention relates generally to systems and methods of ***doing business over a global communications network*** such as the Internet, and more particularly to systems and methods wherein ***various forms of competition and/or entertainment*** are used to determine transaction prices between buyers and sellers.

(Column 1, lines 15-20; emphasis added).  Several prior art systems for conducting e-commerce over the Internet are described in the Background section of the '982 patent, among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com and eBay.  None of these systems, however, allow a buyer to engage in an auction and a competitive activity which ultimately determines the price of the product or service to be secured, ***based on*** the buyer's performance during the auction and competitive activity.  (Col. 1, line 65 to Col. 2, line 3).

Another system for conducting an e-commerce system is described in the newspaper article "E-Commerce That May Be Closer to Home:  Key is Safe Settlement of the Bill," Asahi

---

[1] The application that resulted in the '917 patent is a divisional of the application that resulted in the '982 patent, so that the respective specifications are substantially identical.  For simplicity, we refer herein to the column and line numbers of the '982 specification.

4

Shimbun (Tokyo) morning edition, June 22, 1996; (hereinafter, "*Asahi*"), which was cited by Applicant in the '982 patent. ***Asahi describes a system which allows*** a user to play games of paper-rock-scissors to determine the price for a product. The user decides whether (or not) to purchase a product and makes the ensuing request to purchase the product ***after*** the price has been determined. Although *Asahi* describes a competitive activity, the e-commerce method is completely different from '982 and '917 claims in that it does not include an auction component, and, as with to the prior art systems described in the Background section, no actual purchase occurs in *Asahi* until ***after*** the price is determined.

On the other hand a stated objective of the '982 and '917 patents is to provide an alternative method of conducting e-commerce, such that

> "[s]ellers are able to attract buyers using the marketing incentive that buyers can reduce the price of the offered product or service by performing well at the specified activity. Sellers are willing to put forth the initial offer of a certain price range, in hopes that the average price range of the product over time will be a profitable price within the range, based upon the average performance of potential buyers that is expected to occur. Buyers, on the other hand, are willing to accept the possibility of paying the highest price within the range, in exchange for the opportunity to pay the lowest price (or any lower price) within the range if they can achieve a certain level of performance at the specified activity."

(Column 2, line 66 – column 3, line 10).


## III.   SUMMARY OF THE ARGUMENT

Priceplay.com respectfully submits that the "fundamental concept" of the asserted claims under *Alice* is performance of a sales transaction over the Internet. The '982 specification begins by stating that the "present invention relates generally to systems and methods of doing business over a global communications network such as the Internet," and refines this concept by stating that "more particularly [the invention relates] to systems and methods wherein various forms of competition and/or entertainment are used to determine transaction prices between buyers and sellers" (column 1, lines 16-20).

In its Motion, AOL counters that Priceplay.com's claims "are drawn to an abstract idea – namely, the concept of setting a price based on the buyer's participation in an activity." (AOL Op. Br. at 8).

Whether the Court accepts as the starting point for its eligibility analysis under *Alice*, Priceplay.com's definition of the "fundamental concept" or AOL's, two things are clear.

First, under either characterization, Priceplay.com's claims are directed to a patent-eligible e-commerce concept and not a mathematical formula, fundamental truth, or "fundamental economic practice long prevalent in our system of commerce." *Alice Corp.,* 134 S. Ct. at 2356.  AOL asserts – *without providing any evidence* - that Priceplay.com's claims are directed towards "a very old" abstract idea that upheld "would effectively grant a monopoly over [the] abstract idea itself."  (AOL Op. Br. at 1, 5).  This simply cannot be true, when hundreds of e-commerce models have been commercialized and developed (*e.g., Asahi* e-commerce model was cited by Applicant in the '982 patent) – many such models protected by patent (*e.g.,* several prior art systems for conducting e-commerce over the Internet are described in the Background section of the '982 patent, among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com and eBay, and several were cited during the prosecution of the '982 patent – and new models continue to be developed.

AOL does not provide any evidentiary support for its conclusion.  Instead, AOL merely argues that "[i]n *Alice* and *Bilski*, the Supreme Court held that the financial transactions at issue, intermediated settlement and risk hedging, were abstract ideas."  (AOL Op. Br. at 6).   What AOL leaves out is that in both *Bilski* and *Alice*, the Supreme Court cited to publications - Emery, Speculation on the Stock and Produce Exchanges of the United States, in 7 Studies in History, Economics and Public Law 283, 346-356 (1896) (discussing the use of a "clearing-house" as an

intermediary to reduce settlement risk); The Problematic Case of Clearinghouses in Complex Markets, 101 Geo. L. J. 387, 406-412 (2013); J. Hull, Risk Management and Financial Institutions 103-104 (3d ed. 2012) - to support its conclusion that "risk hedging" and "intermediated settlement," are abstract ideas beyond the scope of §101. *Alice Corp.,* 134 S. Ct. at 2356.

Second, under either characterization, Priceplay.com's claims "transform the nature of the claim" into a patent-eligible application because, when considering the elements of the claims individually and as an ordered combination, they greatly narrow that concept by requiring that the ***result of an auction*** be combined with the result of the "buyer's participation in an activity" to determine the sale price. Also, the '982 claims recite the additional step of receiving "a binding commitment" from the buyer prior to the competitive activity and the auction. Moreover, the various dependent claims further narrow the scope of the claims. For instance, claim 6 of the '982 patent depends on claim 1 and requires the additional "step of ***accepting payment information*** from the buyer over the global communications network; and the payment information is accepted after receiving the data representing the ***binding commitment*** and before the price being paid." (Emphasis added).

Priceplay.com's claims cover a patent-eligible application of an e-commerce concept to a new and useful end – far from preempting all e-commerce based systems, processes, and methods.

## IV.   ARGUMENT

### A.   The Relevant Law

Section 101 of the Patent Act defines the subject matter eligible for patent protection:

*[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement*

7

*thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.*

35 U.S.C. §101.

"In choosing such expansive terms … Congress plainly contemplated that the patent laws would be given wide scope," and "took this approach to patent eligibility to ensure that ingenuity should receive a liberal encouragement." *Bilski v. Kappos*, 561 U.S. 593, *3225 (2010).  "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Association for Molecular Pathology v. Myriad Genetics, Inc*., 133 S. Ct. 2107, 2116 (2013) (internal quotation marks and brackets omitted).

The Supreme Court has emphasized that the concern at the root of this exclusionary principle is one of **pre-emption**. *Alice Corp.*, 134 S. Ct. at 2354, citing as an example *Bilski,* 561 U.S. at 611-12 (confirming the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea"). Laws of nature, natural phenomena, and abstract ideas are "the basic tools of scientific and technological work." *Myriad* 133 S. Ct. at 2116. "[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Mayo Collaborative Service v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (U.S. 2012); In *Alice*, the Supreme Court expressly warned   "that patent law not inhibit further discovery by improperly tying up the future use of" these building blocks of human ingenuity," citing *Mayo*, 132 S. Ct. at 1301(in turn citing *O'Reilly v. Morse,* 56 U.S. 62, 113 (U.S. 1854)).

The Supreme Court, however, balanced this fear of monopolization, cautioning that the court must "tread carefully in construing this exclusionary principle lest it swallow all of patent law," citing *Mayo*, 132 S. Ct. at 1293. As if speaking of AOL's pending Motion, the Court explained that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws

of nature, natural phenomena, or abstract ideas.' *Id.*, at 1293. Accordingly, an invention is not rendered ineligible for patent simply because it involves an abstract concept. *Alice Corp.*, 134 S. Ct. at 2354.   The application of such concepts to a new and useful end, remain eligible for patent protection. *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

The Supreme Court concluded that in applying the §101 exception, courts must distinguish between those patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that integrate the building blocks into something more, *Mayo,* 132 S. Ct. at 1303, thereby "transform[ing]" them into a patent-eligible invention, *id.*, at 1294. "The former 'would risk disproportionately tying up the use of the underlying' ideas, *id.*, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under the patent laws." *Alice Corp.*, 134 S. Ct. at 2355.

The Supreme Court has described a two-step framework for identifying patent-eligible claims, wherein the Court first determines whether the claims at issue are directed to a patent-ineligible concept.   If so, the Court then asks whether the claim's elements, considered both individually and "as an ordered combination," "transform the nature of the claim" into a patent-eligible application. *Alice Corp.*, 134 S. Ct. at 2355.

### B.   The Asserted Claims Are Patent Eligible

The "fundamental concept" or "approach" of the asserted patents – corresponding to "intermediated settlement" in *Alice*, and risk-hedging in *Bilski* – is ***performance of a sales transaction over the Internet***.   As stated above, the '982 specification begins by stating that the "present invention relates generally to systems and methods of doing business over a global communications network such as the Internet." and refines this concept by stating that "more particularly [the invention relates] to systems and methods wherein various forms of ***competition***

9

and/or *entertainment* are used to determine transaction prices between buyers and sellers" (1:16-20; emphasis added).

Predictably, AOL asserts in its Motion that Priceplay.com's claims "are drawn to an abstract idea – namely, the concept of setting a price based on the buyer's participation in an activity." (AOL Op. Br. at 5, 8).

But an invention is not rendered ineligible for patent simply because it involves an abstract concept. *See Diamond v. Diehr,* 450 U.S. 175, 187 (1981).

Whether the Court accepts as the starting point for its eligibility analysis under *Alice,* Priceplay.com's definition of the "concept" or AOL's, two things are clear.

First, under either characterization, Priceplay.com's claims are directed to a patent-eligible e-commerce concept and not a mathematical formula, fundamental truth, or "fundamental economic practice long prevalent in our system of commerce." *Alice Corp.,* 134 S. Ct. at 2356.  AOL asserts – *without providing any evidence* - that Priceplay.com's claims are directed towards "a very old" abstract idea that upheld "would effectively grant a monopoly over [the] abstract idea itself."  (AOL Op. Br. at 1, 5).  This simply cannot be true, when hundreds of e-commerce models have been commercialized and developed (*e.g., Asahi* e-commerce model was cited by Applicant in the '982 patent) – many such models protected by patent (*e.g.,* several prior art systems for conducting e-commerce over the Internet are described in the Background section of the '982 patent, among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com and eBay, and several were cited during the prosecution of the '982 patent – and new models continue to be developed.

AOL does not provide any evidentiary support for its conclusion.  Instead, AOL merely argues that "[i]n Alice and Bilski, the Supreme Court held that the financial transactions at issue,

intermediated settlement and risk hedging, were abstract ideas."  (AOL Op. Br. at 6).   What AOL leaves out of their argument is that in both *Bilski* and *Alice*, the Supreme Court cited to publications - Emery, Speculation on the Stock and Produce Exchanges of the United States, in 7 Studies in History, Economics and Public Law 283, 346-356 (1896) (discussing the use of a "clearing-house" as an intermediary to reduce settlement risk); The Problematic Case of Clearinghouses in Complex Markets, 101 Geo. L. J. 387, 406-412 (2013); J. Hull, Risk Management and Financial Institutions 103-104 (3d ed. 2012) - to support its conclusion that "risk hedging" and "intermediated settlement," are abstract ideas beyond the scope of §101. *Alice Corp.,* 134 S. Ct. at 2356.

Second, under either characterization, Priceplay.com's claims "transform the nature of the claim" into a patent-eligible application because, when considering the elements of the claims individually and as an ordered combination, they greatly narrow that concept by requiring that the ***result of an auction*** be combined with the ***"buyer's participation in an activity"*** to determine the sale price.  This novel combination of a buyer's participation in both an auction **and** a "competitive" or "intermediary" activity is distinct from any of the systems for conducting e-commerce, *e.g.,* those described by inventor in the Background section of the '982 patent, among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com and eBay.  It is also distinct from the e-commerce system described in *Asahi*, which was cited by Applicant in the '982 patent, *e.g.,* although *Asahi* describes a competitive activity, the e-commerce method does not include an auction component.

Plus, "auctions" are mentioned in the specifications as only one of a series of possible features for the disclosed invention.

*The present invention thus may be used independently of other business models,*
*or in combination therewith, to form binding contracts. **For example, using the***

11

> *auction or reverse auction models, the buyer may be entitled to a further discount of the auction or reverse auction price, which discount may be greater if the buyer performs well At the PDA, and not so great if the buyer performs poorly.*

(Column 4, line 64 – column 5, line 3; emphasis added).

Also, in the case of the '982 patent, the claims recite the further feature that the buyer commits to buying the product <u>before</u> the price is determined from the competitive activity and the auction.  Thus, the second limitation of claim 1 is the step of "***receiving data representing a binding commitment from the buyer*** via the global communication network to purchase a product for a price that will be partially based upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased" (*see also* independent claim 7).

Accordingly, the independent claims of the '982 and '917 patent narrows the "concept" of performance of a sales transaction over the Internet by requiring that the price to be paid by the buyer be determined by a combination of results from a ***competitive activity*** and ***an auction***. And in the case of the '982 patent, the independent claims are further narrowed by the requirement that the buyer commit to a price **prior** to starting the competitive activity.  Also, in the claimed system and process, the competitive activity must be (1) in addition to the auction, (2) **collateral to the price**, and (3) **associated with the product being purchased**.  This combination of requirements significantly narrows the concept of the claimed competitive activity.  Plus, as the claimed competitive activity must be collateral to the price and associated with the product being purchased, the multiple-database networked system is both integral and necessary in order for the claimed system to be functional (*e.g.,* the buyers participating in the claimed "competitive activity" or "intermediary activity" would also be limited), especially when

introducing a second buyer and a second price to be calculated via the algorithm, as recited in claims 2-4 and 8-10 (and discussed further below).

Moreover, the various dependent claims further narrow the scope of the claims. For instance, dependent claim 2 additionally requires "***at least two participants*** participating in the competitive activity and the auction" (emphasis added). Claim 3 recites the further step of "receiving data representing a ***second binding commitment from the second buyer*** to purchase the product for a second price; the second price will be at least partially based on the competitive activity and the auction" (emphasis added). And claim 6 of the '982 patent depends on claim 1 and requires the additional "step of accepting payment information from the buyer over the global communications network; and the payment information is accepted after receiving the data representing the ***binding commitment*** and before the price being paid" (emphasis added).

*Alice* requires a court to "determine whether [the claim] contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357. Here, the claims, taken as a whole, recite a specific way of allowing a transaction over the internet that requires that the ***result of an auction*** be combined with the ***"buyer's participation in an activity"*** to determine the sale price, which constitutes an improvement over the many traditional prior art methods that allow "performance of a sales transaction over the internet" that are not within the scope of the claims. Accordingly, the '982 and '917 patents transform the nature of the claims into a specific, practical application of the idea of "performing a sales transaction over the internet."

AOL's motion attempts to shortcut the second step of the Supreme Court's two-step framework for identifying patent-eligible claims by adopting the "straw man" tactic of attacking

13

what is ***not*** in issue, ignoring the aforementioned narrowing substantive claim limitation that are in issue, <u>and</u> mischaracterizing claim 13 of the '917 patent as illustrative. (AOL Op. Br. At 3)

AOL argues that "communication networks, such as the Internet, were in existence long before the Asserted Patents, and communicating and receiving data are the primary functions of computer networks." (AOL Op. Br. at 7). Priceplay.com concedes that that such computer features are not substantive narrowing limitations of the asserted claims under *Alice*, with respect to the § 101 patent eligibility issue. However, Priceplay.com submits that using "an algorithm to calculate the price of the product based …. upon the results of the …competitive activity … and … based on results of the auction" is <u>not</u> a "purely conventional" function performed by a generic computer, since a generic computer is simply not able to perform the claimed functions. Priceplay.com's claimed algorithm, *mischaracterized by AOL*, clearly goes beyond any "well-understood, routine, [and] conventional" computer functions. AOL states nothing substantive to the contrary and provides no evidence that the claimed functions are able to be performed by a generic computer.

At the same time, AOL <u>ignores</u> each of the narrowing substantive claim limitations on the "fundamental concept" or "approach" of the '982 and '917 patents. These limitations of an auction, of binding the buyer to a purchase before the activity begins, and a global communications network integral to the claimed systems, processes, and methods, as well as the limitations of the dependent claims, considered both individually and as an ordered combination, are narrowing substantive claim limitations that transform the nature of the claims into patent-eligible applications. To identify the subject matter of the independent claims of the '982 and '917 patents as "a fundamental concept" without considering these limitations, as AOL asks this

14

Court to do, would rob those words of all meaning and eviscerate the second step of the framework set forth by the Supreme Court in *Alice*.

The '982 and '917 patent claims go well beyond claiming a "fundamental concept" or "approach" by claiming a ***specific combination of elements***.  Accordingly, those claims are not invalid because they would not "pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea," as required by *Alice* for a determination of ineligible subject matter. There is no risk that Priceplay.com's asserted claims, which cover a patent-elibigle application of a "performance of a sales transaction over the Internet" concept to a new and useful end, would "disproportionately tie up" any fundamental concept – competitors remain free to pursue all manner of Internet sales strategies, including a great many involving competitive activities (*e.g.,* among them Amazon.com, Priceline.com, VerticalNet.com, Onsale.com, eBay, and the e-commerce method described in *Asahi*.)  Priceplay.com's claims merely preclude (as do all patent claims) the specific combination of features recited therein.

## V.    CONCLUSION

For the reasons discussed above, Plaintiff Priceplay.com, Inc. asks that this Court deny the Motion to Dismiss of Defendant AOL Advertising Inc.

September 22, 2014

OF COUNSEL:

Scott M. Daniels
Darrin A. Auito
WESTERMAN HATTORI DANIELS &
ADRIAN
1250 Connecticut Avenue, NW, Suite 700
Washington, D.C. 20036
(202) 822-1100
sdaniels@whda.com
dauito@whda.com

BAYARD, P.A.

*/s/ Sara E. Bussiere*
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff PricePlay.Com, Inc.*

16