**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PRICEPLAY.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 14-92-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AOL ADVERTISING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT**
**AOL ADVERTISING, INC.'S MOTION TO DISMISS**

<div style="display:flex">

OF COUNSEL:

George F. Pappas
Thomas L. Cubbage, III
Peter A. Swanson
Sangjoon Han
COVINGTON & BURLING LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004
Tel:  (202) 662-6000

Dated:  October 2, 2014
1167797 / 41363

</div>

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant AOL Advertising, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

I.      The Asserted Patents Are Directed to an Abstract Idea........................................................ 2

II.     The Asserted Patents Do Not Contain an Inventive Concept. ........................................... 6

        A.      The Claimed Price Calculation Method Is Not an Inventive Concept.................... 6

        B.      None of the Claim Limitations Identified by Plaintiff, Either Alone or in
                Combination, Supplies an Inventive Concept........................................................ 8

CONCLUSION....................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)..............................................................................................5

*Alice Corp. v. CLS Bank International*,
    134 S. Ct. 2347 (2014) ................................................................................................ *passim*

*buySAFE, Inc. v. Google, Inc.*,
    --- F.3d ----, No. 2013-1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014).................3, 4, 7, 9

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*,
    --- F. Supp. 2d ----, C.A. No. 12-205-RGA, 2014 WL 3542055 (D. Del. July
    16, 2014) ......................................................................................................................... 3-4

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)......................................................................................4, 6, 10

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
    No. 12-cv-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014) ....................................................5

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)................................................................................................4

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)..................................................................................................................7

*DietGoal Innovations LLC v. Bravo Media LLC*,
    --- F. Supp. 2d ----, No. 13 Civ 8391, 2014 WL 3582914 (S.D.N.Y. July 8,
    2014) ........................................................................................................................................5

*Eclipse IP LLC v. McKinley Equip. Corp.*,
    No. SACV 14-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)............................................5

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)................................................................................................5

*Gametek LLC v. Zynga, Inc.*,
    No. 13-cv-2546, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014)....................................4, 8, 10

*In re Bilski*,
    561 U.S. 593, 130 S. Ct. 3218 (2010)...............................................................................5, 8, 9

*IP Engine, Inc. v. AOL Inc.*,
    No. 2013-1307, 2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) ................................................6

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
     No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)................................4, 5, 7, 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
     566 U.S. ----, 132 S. Ct. 1289 (2012) ...................................................................................3, 8

*McRO Inc. v. Sega of Am., Inc.*,
     No. 12-10327-GW, slip op. (C.D. Cal. Sept. 22, 2014)........................................................7, 8

*Open Text S.A. v. Alfresco Software Ltd.*,
     No. 13-cv-4843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014)...............................................4

*Parker v. Flook*,
     437 U.S. 584 (1978)...................................................................................................................7

*Planet Bingo, LLC v. VKGS LLC*,
     No. 2013-1663, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) ............................................5, 7

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
     C.A. No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) ........................1, 4, 9, 10

*Walker Digital, LLC v. Google, Inc.*,
     C.A. No. 11-318, 2014 WL 4365245 (D. Del. Sept. 3, 2014) ..................................................7

## Statutes & Rules

35 U.S.C. § 101.................................................................................................................... *passim*

Fed. R. Civ. P. 12......................................................................................................................2, 10

## <u>INTRODUCTION</u>

Plaintiff's opposition to Defendant AOL Advertising, Inc.'s motion to dismiss is fundamentally at odds with the Supreme Court's decision in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014).  Further, Plaintiff ignores the litany of post-*Alice* cases that have invalidated patents directed to abstract ideas and other ineligible subject matter.  *Alice* and its progeny make clear that the two asserted patents in this case, U.S. Patent Nos. 8,050,982 and 8,494,917 (collectively, the "Asserted Patents"), are invalid as a matter of law.

In an attempt to salvage its case, Plaintiff makes two flawed arguments.  First, Plaintiff suggests that because the Asserted Patents relate to e-commerce, they are not directed to an "abstract idea."  Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss (D.I. 32) (hereinafter, "Opp'n") at 6-7.  But e-commerce patents are not immune from Section 101 challenges.  To the contrary, *Alice* establishes that where, as here, an e-commerce patent merely implements an abstract idea on a generic computer, the patent does not pass muster under Section 101.  Thus, numerous courts—including this Court in *Tuxis Technologies, LLC v. Amazon.com, Inc.*, C.A. No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014)—have invalidated e-commerce patents as directed to unpatentable abstract ideas.

Here, the abstract idea underlying the Asserted Patents is the concept of determining the price of a product based in part on the buyer's participation in some additional activity.  This is an old and basic concept that is in no way limited to e-commerce or any other technology.  Indeed, the same idea was employed by Babe Ruth and the owners of the New York Yankees nearly a century ago, when they agreed to determine the price of his contract by flipping a coin.  Under *Alice* and other precedent, this concept clearly qualifies as an abstract idea.

Second, Plaintiff argues that the Asserted Patents contain an inventive concept because they do not cover all possible sales transactions, but rather only those involving the claimed price calculation method.  Opp'n at 7.  But this method is the *abstract idea*—and thus cannot be an inventive concept.  Like the abstract idea in *Alice*, the price calculation concept of the Asserted Patents is a "method of organizing human activity," *Alice*, 134 S. Ct. at 2356, and it does not involve technology or any technical field—much less constitute a technological improvement.  Because the Asserted Patents do no more than link this abstract idea to a computer network— which Plaintiff concedes is not an inventive concept, *see* Opp'n at 14—they are patent-ineligible.

In short, Plaintiff has not distinguished this case from *Alice* or the numerous post-*Alice* decisions striking down patents as ineligible under Section 101.  Moreover, Plaintiff does not dispute that this issue may be resolved pursuant to Rule 12(b)(6).  Accordingly, this Court should grant AOL Advertising's Motion and dismiss the Second Amended Complaint with prejudice.

## ARGUMENT

As explained in AOL Advertising's opening memorandum, the Asserted Patents (1) are directed to an abstract idea (the price calculation idea), and (2) do not contain an inventive concept, as they merely apply that idea on a computer network.  *See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss (D.I. 28) (hereinafter, "Def.'s Mem.") at 5-8.  As such, they are patent-ineligible under *Alice* and its progeny.  Plaintiff's arguments to the contrary have no merit.

## I.      The Asserted Patents Are Directed to an Abstract Idea.

Plaintiff first argues that the Asserted Patents are not directed to an abstract idea, but rather to a "patent-eligible e-commerce concept."  Opp'n at 10.  Plaintiff suggests that e-commerce concepts fall outside the abstract idea exception because they are not "mathematical formula[s], fundamental truth[s], or fundamental economic practice[s] long prevalent in our

system of commerce." *Id.* (internal quotation marks omitted).  This argument fails for a number of reasons.

*First*, Plaintiff's suggestion that an e-commerce patent cannot fall within the abstract idea exception misses the entire point of the inquiry.  E-commerce is not the abstract idea underlying the Asserted Patents.  Rather, the abstract idea is calculating the price of a product based in part on the buyer's participation in an activity.  *See* U.S. Patent No. 8,050,982 (D.I. 1-1) (hereinafter, "the '982 patent"), Abstract ("A business process is described for conducting business transactions over the Internet, allowing buyers an opportunity to reduce the price of a product/service based on the buyer's performance during a Price-Determining Activity.").  Like the intermediated settlement concept in *Alice*, this idea is a "method of organizing human activity," whose application is not limited to computers or the Internet.  *Alice*, 134 S. Ct. at 2356.  Accordingly, this case "do[es] not push or even test the boundaries of the Supreme Court precedents" applying the abstract idea exception.  *buySAFE, Inc. v. Google, Inc.*, --- F.3d ----, No. 2013-1575, 2014 WL 4337771, at *4 (Fed. Cir. Sept. 3, 2014) (holding that the creation of a "transaction performance guaranty" was an abstract idea).

In arguing that its patents do not include an abstract idea because they are limited to *electronic* commerce, Plaintiff blurs the first step of the *Alice* test—determining whether the claims cover an abstract idea—with the second step—determining whether the non-abstract elements are sufficient to "'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. ----, 132 S. Ct. 1289, 1297 (2012)).  This Court recently rejected a similar argument that a patent was not directed to an abstract idea because the claims were limited to a telephony network.  *See Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, --- F. Supp. 2d ----, C.A. No. 12-205-RGA,

2014 WL 3542055, at *3 (D. Del. July 16, 2014).  As the Court explained, "the question for the Court at this juncture is not to determine whether there are sufficient limitations, but instead to determine whether and what is the abstract idea at the heart of the claim." *Id.*  Plaintiff in this case has made the same error.[1]

Plaintiff's argument is also inconsistent with several decisions before and after *Alice* in which e-commerce patents were invalidated as directed to unpatentable abstract ideas.  In *buySAFE*, for example, the Federal Circuit rejected as ineligible claims "directed to creating familiar commercial arrangements by use of computers and networks."  2014 WL 4337771, at *1. And this Court in *Tuxis* invalidated a patent claiming "upselling" through electronic commerce. 2014 WL 4382446, at *3.[2]

**Second**, contrary to Plaintiff's suggestion, the "abstract idea" exception is not limited to "mathematical formula[s], fundamental truth[s], [and] 'fundamental economic practice[s] long prevalent in our system of commerce.'"  Opp'n at 10 (quoting *Alice*, 134 S. Ct. at 2356).  Indeed, several Federal Circuit and district court decisions have invalidated patents under the abstract idea exception where the idea did not fall within one of Plaintiff's three categories.  For example, the Federal Circuit recently held that "solving a tampering problem and also minimizing security

---

[1] To the extent e-commerce is not "long prevalent in our system of commerce," Opp'n at 10, that is because it involves computers.  But the mere presence of a computer in a patent claim does not render the claim patent-eligible under 35 U.S.C. § 101.  *See Alice*, 134 S. Ct. at 2358-59.

[2] *See also, e.g.*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (processing credit applications over electronic networks); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (detecting fraud in credit card transactions over the Internet); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-4843, 2014 WL 4684429, at *4 (N.D. Cal. Sept. 19, 2014) (interacting with customers over the Internet to promote sales and marketing); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *9 (E.D. Tex. Sept. 3, 2014) (converting loyalty points from one vendor for use to make purchases from another vendor); *Gametek LLC v. Zynga, Inc.*, No. 13-cv-2546, 2014 WL 1665090, at *4 (N.D. Cal. Apr. 25, 2014) (allowing player of a game to purchase items during game play).

risks during bingo ticket purchases" was an unpatentable abstract idea. *Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) (non-precedential). This is not a "mathematical formula, fundamental truth, or 'fundamental economic practice,'" Opp'n at 10, yet the court concluded that it is an abstract idea because it "is similar to the kind of 'organizing human activity' at issue in *Alice*," *Planet Bingo*, 2014 WL 4195188, at *2 (quoting *Alice*, 134 S. Ct. at 2356); *see also Alice*, 134 S. Ct. at 2357 (explaining that the Court's decision did not "delimit the precise contours of the 'abstract ideas' category").[3]

The same is true for the price determination concept of the Asserted Patents. The concept "is indistinguishable in principle from the simple and familiar financial or business operations that were at issue in *Bilski* and *CLS Bank*, as well as similar financial operations at issue in various Federal Circuit decisions in which the claims were held to be invalid under section 101." *Loyalty Conversion Sys.*, 2014 WL 4364848, at *8 (holding that conversion of loyalty points of one vendor to points of another vendor was an abstract idea).

***Third***, even under Plaintiff's erroneous definition of "abstract idea," the price calculation concept would be unpatentable. Transactions in which the buyer can seek to lower the price by engaging in an intermediary activity have been "long prevalent in our system of commerce." Opp'n at 10. For example, a coin flip is an age-old method of resolving a stalemate over price in

---

[3] *See also, e.g.*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) ("generating tasks [based on] rules . . . to be completed upon the occurrence of an event") (alterations in original); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) ("a real estate investment tool designed to enable tax-free exchanges of property"); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742, 2014 WL 4407592, at *7 (C.D. Cal. Sept. 4, 2014) ("asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else"); *Data Distribution Techs., LLC v. BRER Affiliates, Inc.*, No. 12-cv-4878, 2014 WL 4162765, at *11 (D.N.J. Aug. 19, 2014) ("maintaining a database and updating users about new information"); *DietGoal Innovations LLC v. Bravo Media LLC*, --- F. Supp. 2d ----, No. 13 Civ 8391, 2014 WL 3582914, at *1 (S.D.N.Y. July 8, 2014) ("meal planning").

negotiations between a buyer and a seller.  The parties agree, before the coin flip, that if the

buyer wins, he will pay his preferred price, whereas if he loses, he will pay the seller's preferred

price.[4]  This is the same basic concept underlying the Asserted Patents:  "Sellers offer the

product/service within a specified price range, and buyers agree to a binding agreement, in

exchange for the opportunity to close the transaction at the lowest price by achieving a high

score or performance during the [Price-Determining Activity]."  '982 Patent, Abstract.

## II.     The Asserted Patents Do Not Contain an Inventive Concept.

Because the Asserted Patents do no more than apply the abstract price calculation idea to

a generic computer network, they do not contain an inventive concept.  *See* Def.'s Mem. at 7-8.

Plaintiff concedes that, under *Alice*, the network-related claim limitations do not represent an

inventive concept.  Opp'n at 14.  However, Plaintiff argues that the price calculation idea itself is

an inventive concept.  *Id.* at 11-15.  Once again, Plaintiff misses the mark.

### A.     The Claimed Price Calculation Method Is Not an Inventive Concept.

Plaintiff's second argument (like its first) misapprehends that the price calculation

method is an unpatentable abstract idea.  Thus, it cannot serve as the inventive concept under

*Alice*.  The idea does not "purport to improve the functioning of the computer itself," nor does it

"effect an improvement in any other technology or technical field."  *Alice*, 134 S. Ct. at 2359;

*see also IP Engine, Inc. v. AOL Inc.*, No. 2013-1307, 2014 WL 3973501, at *9 (Fed. Cir. Aug.

15, 2014) (non-precedential) (Mayer, J., concurring) ("[T]he inventive concept itself must be

*new technology*.") (emphasis added).  Indeed, the price calculation method "can be performed by

human thought alone"—a hallmark of an abstract idea.  *CyberSource*, 654 F.3d at 1373; *see also*

---

[4] A famous example is Babe Ruth's contract negotiation with the owners of the New York Yankees in 1922.  After failing to reach an agreement, the parties flipped a coin to determine the terms of Ruth's new contract.  *See Babe Ruth Signs for Three Years at Toss of a Coin*, N.Y. Times, Mar. 6, 1922, at 1 (Swanson Decl. Ex. A).  Ruth won the toss.

*Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318, 2014 WL 4365245, at *9 (D. Del. Sept. 3, 2014) ("because [the claim] can be performed entirely in a person's mind using routine and conventional steps, it is not directed to patentable subject matter").

Plaintiff asserts that the abstract idea (or "fundamental concept") is limited to the "performance of a sales transaction over the Internet," and the price calculation method is a novel and narrow application of the abstract idea. Opp'n at 12. But Plaintiff's position would be akin to characterizing the abstract idea in *Alice* as a generic financial transaction, rather than the "intermediated settlement" concept that the Supreme Court considered. 134 S. Ct. at 2355. *Alice* and its progeny demonstrate that Plaintiff's overbroad formulation of the abstract idea is incorrect. *See buySafe*, 2014 WL 4337771, at *4 (abstract idea was creation of a "transaction performance guaranty"); *Planet Bingo*, 2014 WL 4195188, at *2 (abstract idea was "'solv[ing a] tampering problem and also minimiz[ing] other security risks' during bingo ticket purchases") (alterations in original); *Loyalty Conversion Sys.*, 2014 WL 4364848, at *8 (abstract idea was "conversion of loyalty award points of one vendor into loyalty award points of another").

Moreover, the alleged novelty of the price calculation idea within the area of e-commerce, *see* Opp'n at 4-5, 11, does not make it patentable. The Supreme Court has long recognized that patent eligibility does not turn on the novelty of a law of nature or abstract idea: "[A] new mineral discovered in the earth or a new plant found in the wild is not patentable subject matter. Likewise, Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980); *see also Parker v. Flook*, 437 U.S. 584, 591-92 (1978) ("[T]he novelty of the mathematical algorithm is not a determining factor at all."); *McRO Inc. v. Sega of Am., Inc.*, No. 12-10327-GW, slip op. at 20 (C.D. Cal. Sept. 22, 2014) (Swanson Decl. Ex. B) ("[F]or purposes of the § 101 inquiry, . . .

the revolutionary nature of an abstract idea does not weigh in favor of patentability.").  Nor is a novel application of an abstract idea by itself sufficient, given that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment."  *Alice*, 134 S. Ct. at 2358 (quoting *In re Bilski*, 561 U.S. 593, 130 S. Ct. 3218, 3230 (2010)); *see also McRO*, slip op. at 19 (Swanson Decl. Ex. B) ("But a § 101 defect does not mean that the invention was in the prior art.  The invention here may have been novel, but the claims are directed to an abstract idea.").

Plaintiff also contends that the alleged narrowness of the price calculation method—*i.e.*, it does not preempt all sales transactions—supports the patentability of the claims.  Opp'n at 12, 14.  Again, Plaintiff's argument runs directly counter to Supreme Court precedent:  "[O]ur cases have not distinguished among different laws of nature according to whether or not the principles they embody are sufficiently narrow."  *Mayo*, 132 S. Ct. at 1303.  "A patent need not . . . preempt an entire field to run afoul of § 101; instead, the question is whether the patent would risk disproportionately tying up the use of the abstract idea."  *Gametek*, 2014 WL 1665090, at *5 (citing *Mayo*, 132 S. Ct. at 1294).  Here, the Asserted Patents would disproportionately tie up the use of an abstract idea—the price calculation concept—and thus are invalid under Section 101.

Similarly, the fact that the claims are limited to auctions, *see* Opp'n at 11, is not sufficient to render the claims patentable.  At most, this "limit[s] [the] abstract idea to one field of use," but that does "not make the concept patentable."  *Bilski*, 130 S. Ct. at 3231 (claims to risk hedging were not patentable, even where they were limited to the commodities and energy markets).

### B.    None of the Claim Limitations Identified by Plaintiff, Either Alone or in Combination, Supplies an Inventive Concept.

Plaintiff contends that several limitations further narrow the scope of the independent and dependent claims.  For instance, Plaintiff argues that the independent claims in the '982 patent

"are further narrowed by the requirement that the buyer commit to a price prior to starting the competitive activity," and "the competitive activity must be (1) in addition to the auction, (2) collateral to the price, and (3) associated with the product being purchased." Opp'n at 12. But all of these alleged requirements relate to the abstract idea—the price calculation method—and thus do not supply the necessary "inventive concept."[5]

Likewise, Plaintiff points to dependent claims in the '982 patent requiring, *inter alia*, "at least two participants participating in the competitive activity and the auction" (claim 2); "a second binding commitment from the second buyer to purchase the product for a second price" (claim 3); and "accepting payment information from the buyer over the global communications network" (claim 6). *Id.* at 13. Again, each of these additional limitations does nothing more than refine the abstract idea or add insignificant post-solution activity. They therefore do not transform the abstract idea into a patent-eligible application. *See Bilski*, 130 S. Ct. at 3231 ("*Flook* established that . . . adding token postsolution components [to an abstract idea] did not make the concept patentable."); *buySafe*, 2014 WL 4337771, at *4 (holding that dependent claims were ineligible where they simply "narrow[ed]" an abstract idea "to particular types of [contractual] relationships").

Finally, Plaintiff asserts that "using an algorithm to calculate the price of the product," which is one of the limitations of the '982 patent claims, "is not a 'purely conventional' function performed by a generic computer." Opp'n at 14. This defies credulity. Calculating a price is clearly as conventional as the computer functions in *Alice* and numerous other cases. *See, e.g.*, *Alice*, 134 S. Ct. at 2359 ("create and maintain 'shadow' accounts"); *Tuxis*, 2014 WL 4382446,

---

[5] AOL Advertising does not necessarily agree with Plaintiff's interpretations of the claims of the patents. Even under Plaintiff's interpretations, however, the claims are plainly patent-ineligible.

at *5 ("generate an upsell recommendation"); *Loyalty Conversion Sys.*, 2014 WL 4364848, at *9 ("enabling a customer to make e-commerce purchases from a vendor"); *Gametek*, 2014 WL 1665090, at *1 ("setting the purchase price of the at least one game object").  Indeed, the Asserted Patents themselves indicate that this function can be performed by a generic web server. *See* '982 Patent col. 7 ll. 59-62 ("The operation controller may be a computer server which provides content to and manages a website implementing the concepts described herein.").

In *Loyalty Conversion Systems*, Judge Bryson rejected (on a Rule 12 motion) a similar argument that a special purpose computer, rather than a generic computer, was required for certain e-commerce functions, namely the granting and redeeming of loyalty points.  2014 WL 4364848, at *10.  Like the functionality in that case, the price calculation method here "consist[s] of simple forms of data recording, storage, and ***calculation***, all of which are conventional functions that can be performed by a generic computer without any novel programming or improvement in the operation of the computer itself." *Id.* (emphasis added).  In fact, the method "could be performed by a human being without the aid of a computer of any kind" (as Babe Ruth and the owners of the Yankees did in 1922). *Id.  See also CyberSource*, 654 F.3d at 1372 (observing that "the broad scope of [the asserted claim] extends to essentially any method of detecting credit card fraud . . . even methods that can be performed in the human mind.").  Thus, the requirement that a computer calculate the price is "not *enough* to transform [the] abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2360 (emphasis in original).

## CONCLUSION

For the reasons set forth above and in AOL Advertising's opening memorandum, the Motion to Dismiss should be granted, and the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

George F. Pappas
Thomas L. Cubbage, III
Peter A. Swanson
Sangjoon Han
COVINGTON & BURLING LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004
Tel:  (202) 662-6000

Dated:  October 2, 2014
1167797 / 41363

By:   /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendant AOL Advertising, Inc.*

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 2, 2014, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 2, 2014, the attached document was Electronically Mailed to the following person(s):

Richard D. Kirk
Stephen B. Brauerman
Vanessa R. Tiradentes
Sara E. Bussiere
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Scott M. Daniels
Darrin A. Auito
WESTERMAN HATTORI DANIELS &
ADRIAN
1250 Connecticut Avenue, NW
Suite 700
Washington, D.C. 20036
sdaniels@whda.com
dauito@whda.com

By:   /s/ David E. Moore
        Richard L. Horwitz
        David E. Moore
        Bindu A. Palapura
        POTTER ANDERSON & CORROON LLP
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

1150836/41363