IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRICEPLAY.COM, INC.,

Plaintiff;

v.

AOL ADVERTISING, INC.,

Defendant.

Civil Action No. 14-92-RGA

MEMORANDUM OPINION

Richard D. Kirk, Esq., Stephen B. Brauerman, Esq., Vanessa R. Tiradentes, Esq., Sara E. Bussiere, Esq., BAYARD, P.A., Wilmington, DE; Scott M. Daniels, Esq. (argued), Darrin A. Auito, Esq., WESTERMAN HATTORI DANIELS & ADRIAN, Washington, DC.

Attorneys for Plaintiff Priceplay.com, Inc.

David E. Moore, Esq., Bindu A. Palapura, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, DE; George F. Pappas, Esq., Thomas L. Cubbage, III, Esq., Peter A. Swanson, Esq. (argued), Sangjoon Han, Esq., COVINGTON & BURLING LLP, Washington, DC.

Attorneys for Defendant AOL Advertising, Inc.

March 18, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is AOL's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 27). The motion has been fully briefed (D.I. 28, 32 & 33), and oral argument was held on October 27, 2014. (D.I. 43).[1] Prior to oral argument, the Court issued an oral order directing Priceplay to submit proposed claim constructions. (D.I. 35). Priceplay submitted its proposed claim constructions on October 17, 2014. (D.I. 38). During oral argument, both parties agreed that Priceplay's proposed constructions did not affect either party's arguments regarding the Motion to Dismiss. (D.I. 43 at 5:12–21). For the reasons set forth herein, AOL's Motion to Dismiss is granted with regard to all of the claims in the '982 and '917 patents.

## I. BACKGROUND

Priceplay filed the current action on January 22, 2014, alleging patent infringement of U.S. Patent Nos. 8,050,982 ("the '982 patent") and 8,494,917 ("the '917 patent"). (D.I. 1).[2] The abstract of the '982 patent describes the invention as: "[a] business process . . . for conducting business transactions over the Internet, allowing buyers an opportunity to reduce the price of a product/service based on the buyer's performance during a Price-Determining-Activity (PDA)." (D.I. 1-1 at 2). The '982 specification provides that "[t]he present invention comprises a business model used to determine the price of goods and/or services" (*Id.* at 6, 2:23–25) where:

> Sellers offer a product or service within a specified price range, and buyers enter into a contract to buy the product or service within that price range. The ultimate price (within the range) is determined

[1] Since oral argument, both parties have submitted Notices of Supplemental Authority. (D.I. 40–42, 44, 45, 47 & 48). With the exception of *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), the Court found most of this additional authority not entirely relevant or on-point.

[2] The application that resulted in the '917 patent is a divisional of the application that resulted in the '982 patent, and the respective specifications are substantially identical. For simplicity, I refer to the column and line numbers of the '982 specification, unless stated otherwise.

> based upon the buyer's performance rating, or score, which the buyer receives from participating in a collateral activity.

(*Id.* at 6, 2:28–33). The collateral activity "may be a video game (including audio/visual games), electronic board game, crossword puzzle or other word game, sports bet, card game, or any other activity or combination of activities . . . ." (*Id.* at 6, 2:36–39).

During oral argument, Priceplay informed the Court that it would focus its argument on claim 1 of the '982 patent (D.I. 43 at 24:17–18), which it believes to be representative of the asserted claims. (*Id.* at 24:7–9). I agree that claim 1 of the '982 patent is representative:

> A system comprising multiple databases accessible by at least one computer server, wherein the system is programmed to perform the steps of a sales transaction, the steps comprising:
>
> communicating via the global communication network to a buyer;
>
> receiving data representing a binding commitment from the buyer via the global communication network to purchase a product for a price that will be partially based upon the buyer's participation in an auction and participation in a competitive activity that is in addition to placing bids in the auction and that is collateral to the price and associated with the product being purchased;
>
> wherein the competitive activity is required as part of the sales transaction; and
>
> using an algorithm to calculate the price of the product based at least partially upon the results of the participation of the buyer in the competitive activity and at least partially based on results of the auction; wherein the price is at least partially dependent on the outcome of the competitive activity.

(D.I. 1-1 at 11, 11:2–22). The only other independent claim of the '982 patent is claim 7, which is a process claim, and is almost identical to claim 1. (*Id.* at 11, 12:1–20). There are no material differences between the process claims and the system claims in the '982 patent. During oral argument, Priceplay conceded that its argument for the '917 patent is not as strong as that for the '982 patent. (D.I. 43 at 34:9–10). Priceplay did not address the '917 claims during oral

argument, but advised the Court to apply the same analysis as for the '982 claims. (*Id.* at 34:7–13).

## II. LEGAL STANDARD

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs are to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm" as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an

'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357 (internal quotation marks omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610 (2010) (internal quotation marks omitted)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial*, 772 F.3d at 716.

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007). At the motion to dismiss stage, any proposed claim constructions of the non-moving party should be accepted.

The Federal Circuit has held that it is not required for a district court to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

## III. DISCUSSION

In applying the two-step framework outlined in *Alice*, it is clear that the claims of the '982 patent and '917 patent are drawn to patent-ineligible subject matter. The patents claim the abstract idea of "a sales transaction," which is a fundamental economic concept. While additional limitations narrow the scope of the claims, these limitations do not amount to an "inventive concept." Therefore, the '982 and '917 claims are invalid.

### A. Abstract Idea

Under the two-step *Alice* framework, the Court must first determine whether the claims at issue are directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355. The parties appear to agree that a sales transaction forms the basis of the claimed system and process, and only disagree over what limitations should be included when describing that concept. AOL characterizes the fundamental concept of the claimed invention as "a sales transaction whereby the buyer has the opportunity to reduce the price of the product by participation in an additional activity." (D.I. 43 at 12:20–23). Priceplay, on the other hand, characterizes the fundamental concept as "performance of a sales transaction over the Internet." (D.I. 32 at 12). Consistent with both parties' proposals, the preamble for claim 1 of the '982 patent describes the invention as: "A system . . . programmed to perform the steps of a sales transaction." (D.I. 1-1 at 11, 11:2–3). Claim 7 of the '982 patent recites: "A process of performing a sales transaction." (*Id.* at 11, 12:1). While the claims provide additional limitations, it is clear that the '982 and '917 claims are directed to the abstract idea of a sales transaction.

Priceplay argues that the claimed invention cannot be directed to patent-ineligible subject matter when "hundreds of e-commerce models have been commercialized and developed" in recent years. (D.I. 32 at 13). For support, Priceplay relies on the following e-commerce models

described in the '982 specification: Amazon.com, Priceline.com, VerticalNet.com, Onsale.com, and eBay.com.[3] (D.I. 1-1 at 6, 1:37–56). Priceplay's reliance on these e-commerce models is unavailing, however, because even if some of these models are patented, the patents were granted prior to the Supreme Court's decision in *Alice*, and have not, to the Court's knowledge, been challenged for invalidity. There are many products and services that are commercially available that are not directed to patent-eligible subject matter. Therefore, the examples provided by Priceplay have little impact on the patentability of the claimed subject matter.

During oral argument, Priceplay conceded that, absent the additional limitations, the claimed invention is directed to an abstract idea. (D.I. 43 at 32:16–20). The Federal Circuit has made clear that "the addition of merely novel or non-routine components to the claimed idea" does not "necessarily turn[] an abstraction into something concrete." *Ultramercial*, 772 F.3d at 715. Further, "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis." *Id.* Priceplay's proposed characterization of the claimed concept—"performance of a sales transaction over the Internet"—is an abstract idea. Like "intermediated settlement" in *Alice* and "risk hedging" in *Bilski*, a sales transaction is a "fundamental economic practice long prevalent in our system of commerce." *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611. Performing a sales transaction over the Internet, or in conjunction with an auction and a competitive activity, does not make the concept any more "concrete." Therefore, the patent claims are directed to patent-ineligible subject matter.

[3] The '982 specification only cites a patent number for the e-commerce model associated with Priceline.com. I have no information regarding patents for the other models.

## B. Inventive Concept

After determining that the claims are directed to an abstract idea, the Court must determine whether the claims contain an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. Priceplay argues that the independent claims of the '982 and '917 patent "greatly narrow [the abstract] concept by requiring that the result of an auction be combined with the 'buyer's participation in an activity' to determine the sale price." (D.I. 32 at 14). Priceplay highlights that claim 1 of the '982 patent requires: (1) the buyer to commit to buying the product before determining the price through the competitive activity and auction; (2) the competitive activity to be "associated with the product being purchased"; and (3) the use of an algorithm to calculate price. (D.I. 1-1 at 11:2–22). Priceplay argues that the "novel combination of a buyer's participation in both an auction and a 'competitive' or 'intermediary' activity is distinct from any of the systems for conducting e-commerce," and thus makes the subject matter patent-eligible. (D.I. 32 at 14). Novelty, however, is not the issue when determining whether a claimed invention is directed to patentable subject matter. *See Parker v. Flook*, 437 U.S. 584, 588 (1978). Instead, the claims must provide "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355.

The addition of an auction and a competitive activity to a sales transaction is nothing more than the addition of "well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715. Prior to *Alice*, the Federal Circuit has held that an invention claiming a method of conducting auctions for multiple items over a computer network was directed to patent-ineligible subject matter. *See In re Schrader*, 22 F.3d 290, 295 (Fed. Cir. 1994). After *Alice*, the Federal

Circuit has held that patent claims directed to "managing a bingo game" consisted "solely of mental steps which can be carried out by a human using pen and paper," and thus were patent-ineligible. *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014).[4] The Northern District of California has also held that a patent claiming an invention "designed to facilitate e-commerce price selection and optimization" was patent-ineligible. *OIP Techs, Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *12 (N.D. Cal. Sept. 11, 2012). Here, Priceplay's claimed invention merely combines the abstract ideas found to be patent-ineligible in *Schrader*, *Planet Bingo*, and *OIP*. The limitations in claim 1 of the '982 patent do not transform the abstract idea because they "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial*, 772 F.3d at 715. The elements of the claims "both individually and as an ordered combination" provide "routine additional steps," which do not transform the abstract idea into patent-eligible subject matter. *Id.* at 715–16.

The fact that the claims require the communication to be over the Internet does not save the claimed invention from invalidity. (D.I. 1-1 at 11, 11:6–7). The Supreme Court has made clear that "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358. Contrary to Priceplay's assertion during oral argument (D.I. 43 at 40:11–19), the Internet is not essential to perform the claimed functions. Reliance on an intermediary activity to determine price has been a practice in sale negotiations throughout history, long before the existence of the Internet or computers. For example, using a coin flip to decide a contract term, where the parties agree beforehand that both will be bound by the result.[5] (D.I. 33 at 5). Similarly, by 1976,

---

[4] The Court understands this is not a precedential opinion.

[5] AOL provides the story of Babe Ruth's contract negotiations in 1922, where Ruth and the owners of the New York Yankees agreed to flip a coin to determine the terms of Ruth's new contract. (D.I. 33 at 10 n.4). If Ruth won he

litigants were entering into "high-low contracts," where the "defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of trial."[6] Further, the '982 specification makes clear that "[o]ff-line sweepstakes systems are also known, which allow a game player to win cash or other prizes or credits depending on the player's performance of a specified set of tasks," citing an example requiring a player to scratch off a covered area on a card to reveal a prize. (D.I. 1-1 at 6, 2:4–6). For each claim element in claim 1, "the function performed by the computer at each step of the process is '[p]urely conventional.'" *Alice*, 134 S. Ct. at 2359. Auctions, competitive activities, and sales transactions are all abstract ideas, and do not become non-abstract when combined and conducted over the Internet. The claim limitations do not "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Id.* Priceplay concedes that the "computer features are not substantive narrowing limitations of the asserted claims under *Alice*, with respect to the § 101 patent eligibility issue." (D.I. 32 at 17). Thus, the claimed functions performed by the computer are "purely conventional," and merely "require a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359.

Priceplay also argues that the dependent claims in the '982 patent transform the abstract idea into patentable subject matter. Dependent claim 2 requires "at least two participants participating in the competitive activity and the auction." (D.I. 1-1 at 11, 11:23–25). Dependent claim 3 requires "receiving data representing a second binding commitment from the second

---

would receive his preferred terms (including salary), but if the owners won they would receive their preferred terms. Ruth won the coin toss and received his preferred terms. AOL provides another example where a restaurant enters into a binding agreement with a patron that if the patron finishes a meal in an allotted time the patron receives the meal for free, but if the patron fails to finish the meal the patron must pay for the meal in full. (D.I. 43 at 9:22–10:1).

[6] J.J. Prescott et al., *Trial and Settlement: A Study of High-Low Agreements*, 57 J.L. & Econ. 699, 700 & n.3 (2014) ("High-low agreements allow both sides to hedge their bets and appear to have become increasingly popular over the last 30 years.").

buyer to purchase the product for a second price; the second price will be at least partially based on the competitive activity and the auction." (*Id.* at 11, 11:26–31). Dependent claim 6 requires "the step of accepting payment information from the buyer over the global communications network; and the payment information is accepted after receiving the data representing the binding commitment and before the price being paid." (*Id.* at 11, 11:39–43). These claims, however, "add nothing of practical significance to the underlying idea," and thus do not transform the sales transaction into patentable subject matter. *Ultramercial*, 772 F.3d at 716. In the present case, the specifications in the '982 and '917 patents are identical, and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. Therefore, the independent and dependent claims of the '982 and '917 patents fail to provide an inventive concept, and thus are patent-ineligible.

## IV. CONCLUSION

For the reasons set forth above, AOL's Motion to Dismiss is granted with respect to all of the claims in the '982 and '917 patents. A separate Order consistent with this Memorandum Opinion will be issued.